**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAN TRAN,<br><br>Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., NEIL F. MCFARLANE, DAVID L. MAHONEY, MICHAEL F. BIGHAM, MARTHA J. DEMSKI, MARDI C. DIER, WILLIAM W. ERICSON, JOHN A. MACPHEE, SPYRIDON PAPAPETROPOULOS, and ANNA S. RICHO,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Tran Tran ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Adamas Pharmaceuticals, Inc. ("Adamas" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Supernus Pharmaceuticals, Inc. ("Parent")

through merger vehicle Supernus Reef, Inc. ("Purchaser") (collectively with "Parent", "Supernus") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.  The terms of the Proposed Transaction were memorialized in an October 12, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Supernus will acquire all of the remaining outstanding shares of Adamas' common stock at a price of $$8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of approximately $450 million). As a result, Adamas will become an indirect wholly-owned subsidiary of Supernus.

3.  Thereafter, on October 25, 2021, Adamas filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.  The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board failed to create a committee of independent and disinterested directors to run the sales process.

5.  Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act Defendants caused to be filed the materially deficient Recommendation Statement on October 25, 2021, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Adamas shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Adamas, provided by Adamas to the Company's financial advisor Lazard Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Lazard and provided to the Company and the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of Oregon and, at all times relevant hereto, has been a Adamas stockholder.

10. Defendant Adamas focuses on the discovery, development, and commercialization of medicines for patients suffering from chronic neurologic disorders in the United States. Adamas is incorporated under the laws of the State of Delaware and has its principal place of business at 1900 Powell Street, Suite 1000, Emeryville, CA 94608. Shares of Adamas common stock are traded on the NasdaqGS under the symbol "ADMS."

1      11.     Defendant Neil F. McFarlane ("McFarlane") has been a Director of the Company at all relevant times. In addition, McFarlane serves as the Company's Chief Executive Officer ("CEO").

2      12.     Defendant David L. Mahoney ("Mahoney") has been a director of the Company at all relevant times. In addition, Mahoney is the Company's Chairman of the Board of Directors.

3      13.     Defendant Michael F. Bigham ("Bigham") has been a director of the Company at all relevant times.

4      14.     Defendant Martha J. Demski ("Demski") has been a director of the Company at all relevant times.

5      15.     Defendant Mardi C. Dier ("Dier") has been a director of the Company at all relevant times.

6      16.     Defendant William W. Ericson ("Ericson") has been a director of the Company at all relevant times.

7      17.     Defendant John A. MacPhee ("MacPhee") has been a director of the Company at all relevant times.

8      18.     Defendant Spyridon Papapetropoulos ("Papapetropoulos") has been a director of the Company at all relevant times.

9      19.     Defendant Anna S. Richo ("Richo") has been a director of the Company at all relevant times.

10     20.     Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

11     21.     Non-Party Parent is a biopharmaceutical company focused on developing and commercializing products for the treatment of central nervous system (CNS) diseases. Parent was founded in 2005 and is headquartered in Rockville, Maryland. Shares of Parent common stock are traded on the NasdaqGS under the symbol "SUPN".

12     22.     Non-Party Purchaser is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Adamas maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26. Adamas focuses on the discovery, development, and commercialization of medicines for patients suffering from chronic neurologic disorders in the United States. It offers GOCOVRI, an extended release capsule for the treatment of dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy, with or without concomitant dopaminergic medications, as well as an adjunctive treatment to levodopa/carbidopa in patients with Parkinson's disease experiencing OFF episodes; and OSMOLEX ER, an extended release tablet to treat Parkinson's disease and drug-induced extrapyramidal reactions in adult patients. The Company is also developing ADS-4101, which has completed two Phase 1b studies for treating partial onset seizures in patients with epilepsy. In addition, it offers NAMZARIC and NAMENDA XR, a memantine hydrochloride extended release and donepezil hydrochloride capsules for the treatment of moderate to severe dementia of an Alzheimer's type. The Company was formerly known as

NeuroMolecular Pharmaceuticals, Inc. and changed its name to Adamas Pharmaceuticals, Inc. in July 2007. Adamas was incorporated in 2000 and is headquartered in Emeryville, CA.

27. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 9, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted such milestones as Second quarter 2021 total revenues of $22.0 million, a 17% increase over second quarter 2020 and its medicine GOCOVRI with new paid prescriptions of 730, a 97% increase over second quarter 2020.

28. Speaking on these positive results, CEO Defendant McFarlane commented on the Company's positive financial results as follows, "'We delivered a strong performance in the second quarter, with a robust increase in demand set to fuel future growth. We remain on track to achieve our 2021 goals as we navigate the fluid macro environment. With the continued momentum of our GOCOVRI launch alongside our disciplined approach to capital allocation, we are excited about the opportunities ahead for patients and shareholder.'"

29. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Adamas. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

30. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Adamas to enter into the Proposed Transaction without providing requisite information to Adamas stockholders such as Plaintiff.

***The Flawed Sales Process***

31. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32. Notably, the Recommendation Statement indicates that no committee of independent, disinterested directors was created to run the sales process.

33. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Supernus, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Supernus, throughout the sales process, if any, would fall away.

34. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

35. On October 11, 2021, Adamas and Supernus issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **ROCKVILLE, Md. and EMERYVILLE, Calif., Oct. 11, 2021** (GLOBE NEWSWIRE) -- Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of approximately $450 million). The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI® of $150 million in any four consecutive quarters between closing and the end of 2024. The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025. The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.
>
> The transaction will provide Supernus with two marketed products: GOCOVRI (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and Osmolex ER® (amantadine) extended release tablets, approved for the

treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patients.

"This acquisition represents a significant step to further build a strong and diverse Parkinson's disease portfolio, and aligns with our focus of acquiring value-enhancing, clinically-differentiated medicines to treat CNS diseases," said Jack Khattar, President and CEO of Supernus Pharmaceuticals. "We have a proven track record of strong commercial execution, and look forward to building on GOCOVRI's growth momentum so that more patients can benefit from access to Adamas' innovative neurological therapies."

Strategic and Financial Benefits

- Strengthens Parkinson's disease portfolio with GOCOVRI (amantadine) extended release capsules, the first and only FDA-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy.
- Diversifies and increases revenue base and cash flow
- Net sales of GOCOVRI were $71.2 million and $37.7 million in 2020 and for the first six months of 2021, respectively.
- Combined with the acquisition of US WorldMeds CNS products in 2020, this transaction significantly reduces the reliance on net sales of Trokendi XR®. In the first half of 2021 and on a combined proforma basis (including revenue from US WorldMeds and Adamas transactions), net sales of Trokendi XR® represent 48% of Supernus revenues down from 72% (excluding revenue from these transactions).
- Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure.
- The acquisition is expected to be significantly accretive in 2022.

"We are pleased that Supernus recognized the value created at Adamas and firmly believe this path forward is an excellent outcome for not only our shareholders, but all our stakeholders," said Neil F. McFarlane, Chief Executive Officer of Adamas Pharmaceuticals, Inc. "With their shared commitment to helping patients affected by neurological diseases and their extensive resources, Supernus can continue to advance our mission and reach. I am extremely proud of Team Adamas for their hard work and dedication to get us to this point and am confident that partnering with Supernus will maximize the potential of our innovative therapies."

Terms and Financing

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable at closing plus two non-tradable CVRs. All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs). These milestones include (i) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (ii) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million. There can be no assurance any payments will be made with respect to the CVR.

Approvals and Timing of Close

The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock. Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Potential Conflicts of Interest**

36. The breakdown of the benefits of the deal indicates that Adamas insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Adamas.

37. Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Number of Shares Beneficially Owned(1) | Implied Upfront Cash Consideration for Shares | Implied CVR Consideration for Shares(2) |
|---|---|---|---|
| *Executive Officers* | | | |
| Neil F. McFarlane, *Chief Executive Officer* | 112,500 | $ 911,250 | $ 112,500 |
| Vijay Shreedhar, Ph.D., *Chief Commercial Officer* | 47,453 | $ 384,369 | $ 47,453 |
| Christopher B. Prentiss, *Chief Financial Officer* | 40,017 | $ 324,138 | $ 40,017 |
| *Non-Employee Directors* | | | |
| David L. Mahoney, *Chairman of the Board* | 112,781 | $ 913,526 | $ 112,781 |
| Michael F. Bigham | 5,000 | $ 40,500 | $ 5,000 |
| Martha J. Demski. | 16,000 | $ 129,600 | $ 16,000 |
| William W. Ericson, J.D. | 4,624,796(3) | $37,460,848 | $4,624,796 |
| John A. MacPhee, M.P.H. | 197,000 | $ 1,595,700 | $ 197,000 |
| Spyidon Papapetropoulos, M.D., Ph.D. | 5,975 | $ 48,398 | $ 5,975 |
| Anna S. Richo, J.D. | 13,333 | $ 107,997 | $ 13,333 |
| All of our current executive officers and non-employee directors as a group (10 persons) | 5,174,855 | $41,916,326 | $5,174,855 |

38. Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name | Number of Shares Underlying Vested In The Money Company Options(1) | Number of Shares Underlying Unvested In The Money Company Options(2) | In The Money Company Option Exercise Price ($)(3) | Closing Amount Payable for In the Money Company Options ($)(4)(5) | CVR Amount Payable for In the Money Company Options ($)(9) | Number of Shares Underlying Restricted Stock Awards(6) | Closing Amount Payable for Company RSU Awards ($)(5)(7) | CVR Amount Payable for Company RSU Awards ($)(9) | Total Closing Value ($)(5)(8) | Total CVR Value ($)(9) |
|---|---|---|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | | | | |
| Neil F. McFarlane | 234,372 | 215,628 | 1,960,500 | 1,684,500 | 450,000 | 487,500 | 3,948,750 | 487,500 | 5,633,250 | 937,500 |
| Vijay Shreedhar, Ph.D. | 99,008 | 85,992 | 752,325 | 746,175 | 185,000 | 137,032 | 1,109,959 | 137,032 | 1,856,134 | 322,032 |
| Christopher B. Prentiss | 47,394 | 40,106 | 490,375 | 218,375 | 87,500 | 123,750 | 1,002,375 | 123,750 | 1,220,750 | 211,250 |
| *Non-Employee Directors* | | | | | | | | | | |
| David L. Mahoney | 46,666 | 23,334 | 370,300 | 196,700 | 70,000 | 5,000 | 40,500 | 5,000 | 237,200 | 75,000 |
| Michael F. Bigham | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| Martha J. Demski | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| William W. Ericson, J.D. | 20,000 | 10,000 | 127,100 | 115,900 | 30,000 | 5,000 | 40,500 | 5,000 | 156,400 | 35,000 |
| John A. MacPhee, M.P.H. | 44,000 | 10,000 | 206,420 | 230,980 | 54,000 | 5,000 | 40,500 | 5,000 | 271,480 | 59,000 |
| Spyridon Papapetropoulos, M.D., Ph.D. | — | 30,000 | 139,100 | 103,900 | 30,000 | 15,000 | 121,500 | 15,000 | 225,400 | 45,000 |
| Anna S. Richo, J.D. | 6,666 | 23,334 | 154,500 | 88,500 | 30,000 | 11,667 | 94,503 | 11,667 | 183,003 | 41,667 |

39.     In addition, certain employment agreements with certain Adamas executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.

40.     These disparate interests held by the Director Defendants as discussed above are presented in the Recommendation Statement collectively as follows:

| Name(1) | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($)(5) |
|---|---|---|---|---|
| Neil F. McFarlane | 2,397,758 | 5,459,036 | 66,000 | 7,922,794 |
| Christopher B. Prentiss | 865,031 | 1,209,670 | 39,000 | 2,113,701 |
| Vijay Shreedhar, Ph.D. | 985,988 | 1,675,963 | 39,000 | 2,700,951 |

41.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. Thus, while the Proposed Transaction is not in the best interests of Adamas, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

43. On October 25, 2021, the Adamas Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. The specific reasoning as to why the Board failed to create an committee composed of independent and disinterested Board members to run the sales process;

    b. Whether the terms of any confidentiality agreements entered during the sales process between Adamas on the one hand, and any other third party (including Supernus), if any, on the other hand, differed from one another, and if so, in what way;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Supernus) throughout the sales process, if any, would fall away; and

d. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Adamas's Financial Projections*

45. The Recommendation Statement fails to provide material information concerning financial projections for Adamas provided by Adamas management and relied upon by Lazard in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

46. The Recommendation Statement should have, but fails to provide, certain information in the projections that Adamas management provided to the Board, and Lazard. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47. With regard both the *Adamas Management Projections* and the *Strategic Planning Management Projections*, the Recommendation Statement fails to disclose material line items for the following metrics:

    a. Total Revenue, including all underlying necessary inputs and assumptions, including specifically: the specific amounts for revenue for GOCOVRI, revenue for OSMOLEX ER and revenue for NAMZARIC royalties;

    b. EBIT, including all underlying necessary inputs and assumptions, including specifically: the definition of EBIT utilized and all underlying metrics; and

    c. Levered Cash Flow, including all underlying necessary inputs and assumptions, including specifically: income taxes, net of projected impact of net operating losses, depreciation and amortization, changes in net working capital, capital expenditures, and debt payments.

48. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lazard's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

51. In the Recommendation Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 13.0%;

   b. Adamas's weighted average cost of capital;

   c. The specific inputs and assumptions used to determine the that no terminal values should apply to the analysis; and

   d. The range of enterprise values of Adamas utilized, and all inputs and assumptions utilized to determine them;

   e. Adamas's estimated net cash as of September 30, 2021;

   f. The range of total equity values of Adamas calculated, and all inputs and assumptions utilized to determine them; and

   g. The number of fully diluted shares of Adamas outstanding as of October 8, 2021.

53. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

   a. The date on which each precedent transaction closed; and

   b. The aggregate value of each precedent transaction.

54. With respect to the *Premia Paid Analysis*, the Recommendation Statement fails to disclose the following:

COMPLAINT

      a. The specific inputs and assumptions used to determine the utilized 25th percentile and 75th percentile premia for the selected companies of approximately 36% and 82%, respectively, to Adamas's Share price as of October 8, 2021.

55. With respect to the *Research Analysist Price Targets*, the Recommendation Statement fails to disclose the following:

      a. The specific number of price targets analyzed;

      b. The specific price targets analyzed; and

      c. The identity of the analysts or firms who created the utilized price targets.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Adamas stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

60. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]."

61. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

64. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65. Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

#### (Against all Defendants)

66. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

67. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

68. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

69. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

70. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

71. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

72. Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

73. Plaintiff repeats all previous allegations as if set forth in full herein.

74. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Adamas' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

77. The Individual Defendants acted as controlling persons of Adamas within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Adamas to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Adamas and all of its employees. As alleged above, Adamas is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 29, 2021                **BRODSKY SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*